SRD/ZHR USAO#2021R00117



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | UNDER SEAL |
| | * | |
| v. | * | CRIMINAL NO. RDB-21-0338 |
| | * | |
| GLADSTONE NJOKEM, | * | (Conspiracy to Commit Wire Fraud, |
| MARTIN TABE, and | * | 18 U.S.C. § 1349; Wire Fraud, 18 |
| SYLVESTER ATEKWANE | * | U.S.C. § 1343; Aggravated Identity |
| | * | Theft, 18 U.S.C. § 1028A; and |
| Defendants. | * | Forfeiture, 18 U.S.C. § 981(a)(1)(C), |
| | * | 21 U.S.C. § 853(p), 28 U.S.C. § |
| | * | 2461(c)) |
| | * | |

******

## INDICTMENT

### COUNT ONE
(Conspiracy to Commit Wire Fraud)

The Grand Jury for the District of Maryland charges that:

#### Introduction

At all times relevant to this Indictment:

1.    Defendant **GLADSTONE NJOKEM** ("**NJOKEM**") was a resident of Hyattsville, Maryland.

2.    Defendant **MARTIN TABE** ("**TABE**") was a resident of Bowie, Maryland.

3.    Defendant **SYLVESTER ATEKWANE** ("**ATEKWANE**") was a resident of Hyattsville, Maryland.

#### Background on Maryland, Michigan, and Tennessee Unemployment Insurance

4.    In Maryland, a former employee of a business who has lost his or her job can contact the Maryland Department of Labor ("MD DOL") and submit a claim for unemployment insurance ("UI") benefits. Claims for UI benefits are commonly submitted electronically through

the use of the Internet and Internet-capable computers or other electronic devices. If the former employee meets certain requirements, including having received sufficient wages prior to separation, they become eligible to receive UI benefits.

5.  Prior to April 2021, if MD DOL approved a UI claim, Bank of America ("BOA"), pursuant to a contract with MD DOL, would create and mail a BOA Prepaid VISA debit card with the claimant's name on it, to the claimant based upon information received from MD DOL. MD DOL would subsequently authorize the electronic application of UI benefits to the debit card and continue to do so on a periodic basis if the claimant continued to file for benefits.

6.  In Michigan, former employees can apply for UI benefits through the Michigan Unemployment Insurance Agency ("MI UIA"). Claims for UI benefits are commonly submitted online through use of the Internet and Internet-capable computers or other electronic devices. If the former employee meets certain requirements, they become eligible to receive UI benefits.

7.  If MI UIA approves a UI claim, the claimant can choose to receive UI benefits by direct deposit or via debit card. Prior to August 2021, all claimants that chose the debit card option would be mailed a BOA Prepaid VISA debit card with the claimant's name on it. After MI UIA authorizes the initial deposit of funds, claimants must submit certifications every two weeks to continue to receive UI benefits. These certifications are commonly submitted online.

8.  In Tennessee, former employees may apply for UI benefits through the Tennessee Department of Labor and Workforce Development ("TDLWD"). Claims for UI benefits are commonly submitted online through use of the Internet and Internet-capable computers or other electronic devices. If the former employee meets certain requirements, they become eligible to receive UI benefits.

9. If TDLWD approves a UI claim, the claimant can choose to receive UI benefits by direct deposit or via debit card. If the claimant chooses the debit card option, UI benefits are deposited to a Way2Go Card Debit MasterCard, which is mailed to claimants. After TDLWD authorizes the initial deposit of funds, claimants must submit weekly online certifications to continue to receive UI benefits.

**The Effect of COVID-19 and Federal Legislation on State Unemployment Insurance**

10. On March 18, 2020, the President of the United States signed into law the Families First Coronavirus Response Act (FFCRA), which provided additional flexibility for state unemployment insurance agencies and additional administrative funding to respond to the COVID-19 pandemic.

11. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was signed into law on March 27, 2020. It expanded states' ability to provide UI for many workers impacted by the COVID-19 pandemic, including for workers who are not ordinarily eligible for unemployment benefits.

12. The CARES Act created the Pandemic Unemployment Assistance ("PUA") program. Under PUA, states are permitted to provide PUA to individuals who are self-employed, seeking part-time employment, or otherwise would not qualify for regular UI compensation.

13. To qualify for PUA benefits, an individual must not be eligible for regular UI benefits and be unemployed, partially unemployed, or unable or unavailable to work because of certain health or economic consequences of the COVID-19 pandemic.

14. The CARES ACT also established the Pandemic Emergency Unemployment Compensation ("PEUC") program.

15. PEUC covers most individuals who have exhausted all rights to regular UI compensation under state or federal law and who are able to work, available for work, and actively seeking work as defined by state law.

16. PEUC also gives states the flexibility in determining whether an individual is actively seeking work if the individual is unable to search for work because of COVID-19, including because of illness, quarantine, or movement restrictions.

17. The CARES ACT also established the Federal Pandemic Unemployment Compensation ("FPUC") program.

18. From April 4, 2020 through July 31, 2020, FPUC allowed states to give an additional $600 per week to individuals collecting regular UI compensation, PEUC, PUA, and other approved UI benefit programs by the state.

19. FPUC was reauthorized in December 2020, and beginning in January 2021, FPUC allows states to provide an additional $300 per week to individuals collecting regular UI compensation, PEUC, PUA, and other approved UI benefit programs by the state. The additional, $300-per-week FPUC benefits are set to expire on September 6, 2021.

### The Conspiracy and Scheme to Defraud

20. From in or about February 2020 through in or about February 2021, in the District of Maryland and elsewhere, the defendants,

**GLADSTONE NJOKEM,**
**MARTIN TABE, and**
**SYLVESTER ATEKWANE,**

and others unknown to the Grand Jury, did knowingly and willfully conspire, confederate, and agree to commit wire fraud, that is to knowingly and willfully devise and intend to devise a scheme and artifice to defraud and to obtain money from victims, by means of materially false

4

and fraudulent pretenses, representations, and promises, to wit, impersonating victims for the purposes of submitting fraudulent UI claims (the "scheme to defraud"), and for the purpose of executing and attempting to execute such scheme to defraud, the defendants, **NJOKEM**, **TABE**, **ATEKWANE**, and others unknown to the Grand Jury, did knowingly transmit and cause to be transmitted in interstate commerce by means of a wire communication, certain signals, signs, and sounds, for the purposed of executing the scheme to defraud, in violation of 18 U.S.C. § 1349.

### Manner and Means

21. It was part of the conspiracy and scheme to defraud that **NJOKEM**, **TABE**, **ATEKWANE**, and others unknown to the Grand Jury, obtained the names, dates of birth, and social security numbers ("personally identifiable information") of victims, without lawful authority and by false pretenses. For example, **NJOKEM** obtained personal identifiable information from at least one victim by falsely claiming to sell puppies.

22. It was further part of the conspiracy and scheme to defraud that the defendants, and others unknown to the Grand Jury, used electronic messages, phone calls, electronic mail, and other means to aggregate and exchange the personally identifiable information of victims with each other, and with others not known to the Grand Jury.

23. It was further part of the conspiracy and scheme to defraud that the defendants used personally identifiable information taken from victims to prepare and submit fraudulent applications for UI benefits in Maryland, Michigan, and Tennessee.

24. It was further part of the conspiracy and scheme to defraud that the defendants submitted UI applications containing fraudulent representations, including, for example, the victims' contact information, that the victims lived in a particular state, that the victims were available to work during the prescribed periods, and that the victims were newly unemployed.

25. It was further part of the conspiracy and scheme to defraud that the defendants caused fictitious email addresses and phone numbers to be created for use in the fraudulent UI applications.

26. It was further part of the conspiracy and scheme to defraud that the defendants caused BOA and other financial institutions to mail debit cards for the fraudulent UI claims to the physical addresses provided by the defendants and caused UI benefits to be loaded thereon.

27. It was further part of the conspiracy and scheme to defraud that the defendants used false physical addresses for UI applications, such that any UI benefits that were paid by the state would be received by the defendants, rather than the victims. In some instances, the defendants used their own physical addresses in UI applications to receive the victims' UI benefits. In other instances, the defendants used the addresses of nearby vacant residences to receive UI applications in an effort to avoid detection by government authorities.

28. It was further part of the conspiracy and scheme to defraud that the defendants took the fraudulently obtained debit cards and made cash withdrawals and other transactions throughout the District of Maryland.

29. It was further part of the conspiracy and scheme to defraud that the defendants used the cash for their own benefit and for the benefit of others who also were not entitled to the money.

30. As a result of the conspiracy, defendants, and others unknown to the Grand Jury, caused at least 600 fraudulent UI claims to be submitted in Maryland, Michigan, Tennessee, and at least sixteen other states, resulting more than 2.7 million dollars in losses.

18 U.S.C. § 1349.

## COUNTS TWO THROUGH TEN
### (Wire Fraud)

1. Paragraphs 1 through 19 and 21 through 30 of Count One of this Indictment are hereby incorporated by reference as though fully set forth herein.

2. In or about February 2020 through in or about February 2021, in the District of Maryland and elsewhere, defendants,

**GLADSTONE NJOKEM,**
**MARTIN TABE, and**
**SYLVESTER ATEKWANE,**

for the purpose of executing and attempting to execute such scheme to defraud, did knowingly transmit and cause to be transmitted in interstate commerce by means of a wire communication, certain signals, signs and sounds, for the purpose of executing the scheme to defraud, as set forth below:

| COUNT | DEFENDANT | DATE | VICTIM | DESCRIPTION |
|---|---|---|---|---|
| 2 | Njokem | 6/2/2020 | C.M. | submission of a fraudulent UI application |
| 3 | Njokem | 9/8/2020 | K.P. | withdrawal of money from an ATM |
| 4 | Njokem | 10/27/2020 | M.G. | submission of a fraudulent UI application |
| 5 | Tabe | 6/23/2020 | C.M. | withdrawal of money from an ATM |
| 6 | Tabe | 9/15/2020 | D.M. | withdrawal of money from an ATM |
| 7 | Tabe | 11/27/2020 | C.D. | withdrawal of money from an ATM |
| 8 | Atekwane | 7/15/2020 | K.P. | withdrawal of money from an ATM |
| 9 | Atekwane | 10/24/2020 | I.K. | sending an electronic message with the personally identifiable information of I.K. |
| 10 | Atekwane | 12/26/2020 | A.C. | withdrawal of money from an ATM |

18 U.S.C. § 1343.

## COUNT ELEVEN
### (Aggravated Identity Theft)

The Grand Jury for the District of Maryland further charges that:

1. The allegations set forth in Paragraphs 1 through 19 and 21 through 30 of Count One of this Indictment are incorporated here.

2. Between in or about February 2020 through in or about February 2021, in the District of Maryland, defendant,

**GLADSTONE NJOKEM,**

did, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), knowingly possess and use, without lawful authority, a means of identification of another person, to wit, a debit card bearing the name of K.P., during and in relation to Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349 and Wire Fraud, in violation of 18 U.S.C. § 1343, as charged in Counts One and Three of this Indictment, respectively.

18 U.S.C. § 1028A(a)(1), (c)(4), (c)(5).

## COUNT TWELVE
### (Aggravated Identity Theft)

The Grand Jury for the District of Maryland further charges that:

3. The allegations set forth in Paragraphs 1 through 19 and 21 through 30 of Count One of this Indictment are incorporated here.

4. Between in or about February 2020 through in or about February 2021, in the District of Maryland, defendant,

**MARTIN TABE,**

did, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), knowingly possess and use, without lawful authority, a means of identification of another person, to wit, a debit card bearing the name of C.M., during and in relation to Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349 and Wire Fraud, in violation of 18 U.S.C. § 1343, as charged in Counts One and Five of this Indictment, respectively.

18 U.S.C. § 1028A(a)(1), (c)(4), (c)(5).

## COUNT THIRTEEN
### (Aggravated Identity Theft)

The Grand Jury for the District of Maryland further charges that:

5. The allegations set forth in Paragraphs 1 through 19 and 21 through 30 of Count One of this Indictment are incorporated here.

6. Between in or about February 2020 through in or about February 2021, in the District of Maryland, defendant,

**SYLVESTER ATEKWANE,**

did, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), knowingly possess and use, without lawful authority, a means of identification of another person, to wit, a debit card bearing the name of K.P., during and in relation to Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349 and Wire Fraud, in violation of 18 U.S.C. § 1343 as charged in Counts One and Eight of this Indictment, respectively.

18 U.S.C. § 1028A(a)(1), (c)(4), (c)(5).

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1. Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of the defendants' conviction on any of the offenses charged in Counts One through Ten of the Indictment.

### Wire Fraud Forfeiture

2. Upon conviction of any of the offenses set forth in Counts One through Ten, the defendants,

**GLADSTONE NJOKEM,
MARTIN TABE**, and
**SYLVESTER ATEKWANE**,

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the scheme to defraud, including, but not limited to, a money judgment for each defendant representing the proceeds he obtained from his participation in the scheme to defraud.

### Substitute Assets

3. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

   a. cannot be located upon the exercise of due diligence
   b. has been transferred, sold to, or deposited, with a third party
   c. has been placed beyond the jurisdiction of the court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property that cannot be divided without

difficulty,

the United States shall be entitled to forfeiture of substitute property up to the value of the forfeitable property described above, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C).
21 U.S.C. § 853(p).
28 U.S.C. § 2461(c).

_____
Jonathan F. Lenzner
Acting United States Attorney

SIGNATURE REDACTED
Foreperson
Date: 8/24/2021